David B. Owens, State Bar No. 275030
david@loevy.com
Mike Kanovitz, *pro hac vice* application forthcoming
mike@loevy.com
Scott R. Drury, *pro hac vice* application forthcoming
drury@loevy.com
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 (phone)
(312) 243-5902 (fax)

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TODD HURVITZ, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZOOM VIDEO COMMUNICATIONS, INC., FACEBOOK and LINKEDIN CORPORATION,<br><br>Defendants. | Civil Action No. 2:20-cv-3400<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

LOEVY & LOEVY
Attorneys at Law

Plaintiff Todd Hurvitz, by his attorneys, brings this class action complaint against Defendants Zoom Video Communications, Inc. ("Zoom"), Facebook and LinkedIn Corporation ("LinkedIn") (collectively, "Defendants"), on behalf of himself and all others similarly situated, and alleges, upon personal knowledge as to his own actions and his counsel's investigations, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.     Defendant Zoom promotes itself as the "leader in modern enterprise video communications" that "helps businesses and organizations bring their teams together in a frictionless environment to get more done."

2.     Zoom also contends that it cares for its users and seeks to deliver happiness. Not so. It recently has been revealed that: (a) Defendants Facebook and LinkedIn eavesdropped on, and otherwise read, attempted to read and learned the contents and meaning of, the communications between Zoom users' devices and Defendant Zoom's server; (b) Zoom and LinkedIn disclosed Zoom users' identities to third parties even when those users actively took steps to keep their identities anonymous while using the Zoom platform; and (c) Zoom falsely represented the safeguards in place to keep users' video communications private.

3.     Indeed, the exploitation of Zoom users began simultaneously with the installation of Zoom's software application (the "Zoom App"), especially if they used

the iOS operating system – the system to run to Apple products.  At that time, and each time thereafter that a Zoom user opened or closed the Zoom App, Defendant Facebook eavesdropped on, and otherwise read, attempted to read and learned the contents and meaning of, communications between Zoom users' devices and Defendant Zoom's server without the users' knowledge or consent.

4.     Facebook engaged in that unlawful conduct in order to gather users' personal information and amass increasingly detailed profiles on Zoom users, which profiles Zoom and Facebook then used for their respective financial benefit.

5.     Similarly, Defendant LinkedIn eavesdropped on, and otherwise read, attempted to read and learned the contents and meaning of, communications between Zoom users' devices and Defendant Zoom's server, in order to harvest users' personal information.  Further, Zoom and LinkedIn surreptitiously provided certain Zoom users with the personal information of other users even when the victim users proactively took steps to hide their identities.

6.     Additionally, Defendant Zoom has misrepresented the nature of the security used to protect Zoom users' video communications.  It has also concealed, suppressed and omitted from disclosure various flaws in its products until they are publicly disclosed by third parties, knowing that the disclosures could harm its business.

7.     Plaintiff brings this action for monetary, declaratory and injunctive relief in order to: (a) require Defendants to provide compensation for their unlawful, unfair

and deceptive conduct; (b) require Defendants to disgorge their ill-gotten gains; and (c) prevent and preclude Defendants from engaging in similar conduct in the future.

## PARTIES

8.      Plaintiff Todd Hurvitz is a California resident, residing in the Central District of California.

9.      Defendant Zoom is a Delaware corporation, with its corporate headquarters in San Jose, California.  As of January 31, 2020, Zoom reported quarterly revenue of $188 million and fiscal year revenue of $623 million.  As of December 2019, the maximum number of Zoom meeting participants on a given day totaled 10 million.  As of late March 2020, the number had grown to 200 million participants.

10.      Defendant Facebook is a Delaware corporation, with its corporate headquarters in Menlo Park, California.   Facebook's 2019 revenue totaled approximately $71 billion.  Moreover, as of December 2019, Facebook averaged 2.50 billion monthly active users.  According to a recent filing with the United States Security and Exchange Commission: (a) Facebook is a social network that generates substantially all of its revenue from selling advertising placements to marketers; (b) Facebook ads allow marketers to reach people based on various factors including age, gender, behaviors, location and interests; and (c) Facebook's advertising revenue depends on "targeting and measurement tools that incorporates data signals from user activity on websites."

LOEVY & LOEVY
Attorneys at Law

11.     Defendant LinkedIn is a Delaware subsidiary of Microsoft Corporation ("Microsoft"), with its corporate headquarters in Sunnyvale, California.  According to Microsoft's 2019 Annual Report, LinkedIn is the "world's largest professional network on the Internet" with revenue totaling $5.3 billion.  Among the products offered by LinkedIn at relevant times was LinkedIn Sales Navigator ("Navigator"), a sales tool that provided automated targeting of prospective customers.  The minimum annual fee for access to Navigator was $780.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) (the "Class Action Fairness Act") because sufficient diversity of citizenship exists between the parties in this action, the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, and there are 100 or more members of the Class.

13.     This Court has personal jurisdiction over Defendants because they are headquartered in California, marketed and sold their products to California consumers and businesses and exposed California residents to ongoing privacy risks created by their conduct.

14.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred in the Central District of California.  Alternatively, venue is proper under 28 U.S.C. § 1391(b)(3) because this Court has personal jurisdiction over Defendants.

# FACTUAL ALLEGATIONS

## *Zoom's Business and Business Risk Factors*

15.    According to Defendant Zoom's March 2019 Form S-1 Registration Statement (the "S-1")[1]:

a.    "Video has increasingly become the way that individuals want to communicate in the workplace and their daily lives," and online/cloud video communications represents a $43.1 billion opportunity in 2022;

b.    Zoom was a "video-first communications platform that delivers happiness and fundamentally changes how people interact by connecting them through frictionless video, voice, chat and content sharing";

c.    Zoom's cornerstone product was Zoom Meetings, which provided "HD video, voice, chat and content sharing across mobile devices, desktops, laptops, telephones and conference room systems";

d.    Zoom's business was subject to numerous risk factors;

e.    Zoom recognized that a decline in new users and hosts or in renewals of upgrades from free service to paid subscriptions would

LOEVY & LOEVY
Attorneys at Law

---

[1]   Zoom Video Communications, Inc. SEC Form S-1 Registration Statement (Mar. 22, 2019), https://investors.zoom.us/static-files/fd2d31e8-3320-42ed-9f38-439936418332 (last accessed on Apr. 9, 2020).

LOEVY & LOEVY
Attorneys at Law

hurt Defendant Zoom's business: "Any decrease in user satisfaction with our products or support would harm our brand, word-of-mouth referrals and ability to grow";

16.    At relevant times, it was critical to Defendant Zoom's business plan that it limit bad or negative news regarding its data security and confidentiality practices.

17.    According to Defendant Zoom:

> Any failure or perceived failure by us to comply with our privacy-, data protection- or information security-related obligations to users or other third parties or any of our other legal obligations relating to privacy, data protection or information security may result in governmental investigations or enforcement actions, litigation, claims or public statements against us by consumer advocacy groups or others, and could result in significant liability or cause our users to lose trust in us, which could have an adverse effect on our reputation and business.[2]

18.    Similarly, recognizing its past inability to keep its users' data secure, Defendant Zoom has acknowledged that "[c]oncerns regarding privacy, data protection and information security may cause some of our users and hosts to stop using our solutions and fail to renew their subscriptions.  This discontinuance in use or failure to renew could substantially harm our business."[3]

19.    Defendant Zoom has further conceded that "failures to meet customers' and hosts' expectations with respect to security and confidentiality of their data and

_____

[2] *Id.*
[3] *Id.*

information could damage our reputation and affect our ability to retain customers and hosts, attract new customers and hosts and grow our business."[4]

### Defendant Zoom's Misrepresentations Regarding Data Privacy and Security

20.     Defendant Zoom has consistently represented that it did not allow third parties access to any personal data Zoom collected in the course of providing services to customers.  In fact, as alleged in more detail below, Zoom allowed third parties to access such data.

21.     Further, at relevant times, Defendant Zoom represented that it took security seriously and protected users' data by allowing all shared content to be encrypted using Advanced Encryption Standard ("AES")-256 encryption.

22.     AES is a standard for encrypting  data.

23.     Contrary to Defendant Zoom's representations, Zoom did not protect users' data using either AES-256.  Rather, Zoom used weaker data protection methods that exposed users to security hazards.

### Defendants' History of Lax Security and Data Privacy Practices

#### Defendant Zoom

24.     Defendant Zoom has a long history of lax security practices and deceptive data privacy practices.

---

[4] *Id.*

LOEVY & LOEVY
Attorneys at Law

25.     Indeed, in its S-1, Defendant Zoom conceded that "security incidents have occurred in the past and may occur in the future . . . ."[5]

26.     In numerous instances, Defendant Zoom has claimed to not have become aware of its failure to properly secure users' personal information or its failure to adhere to its own privacy practices until it received notification from third parties.

27.     In July 2018, it was revealed that a flaw in Zoom Meetings "could result in potential exposure of a Zoom user's password."[6]

28.     On October 11, 2018, a cybersecurity company notified Defendant Zoom of a software defect that "allows attackers to hijack control of presenters' desktops, spoof chat messages, and kick attendees out of Zoom calls."[7]

29.     Defendant Zoom did not publicly release a fix to the October 2018 vulnerability until late November 2018.

30.     In March 2019, a software engineer notified Defendant Zoom of a security defect that exposed millions of users to an attack whereby a hacker could access their computers' cameras and microphones and initiate a video-enabled call on a Mac without user consent.  Further research revealed that if a user tried to remedy the defect

LOEVY & LOEVY
Attorneys at Law

---

[5] *Id.*
[6] *Id.*
[7] *Id.*; *see also Zoom Message Spoofing*, Tenable (Oct. 2018), https://www.tenable.com/security/research/tra-2018-40 (last accessed on Apr. 9, 2020).

by uninstalling the Zoom App on his device, Zoom would surreptitiously reinstall it – thereby, again, leaving the user exposed to the security vulnerability.

31.     The engineer who discovered the March 2019 defect rated its severity as 8.5 out of 10.[8]

32.     Rather than immediately remedying the defect, Defendant Zoom released a fix for an unrelated defect.

33.     Defendant Zoom waited almost four months before releasing a fix for the major defect and did so only after a complaint was filed with the Federal Trade Commission (the "FTC") by a privacy advocacy organization.

***Defendant Facebook***

34.     Defendant Facebook has a long history of lax security practices and deceptive data privacy practices, as exemplified by the allegations below:

35.     In 2011, a researcher disclosed that Defendant Facebook covertly tracked the websites Facebook users visited when users were logged out of Facebook. Facebook began engaging in the conduct in April 2010 and did not cease doing so until the *Wall Street Journal* published the researcher's findings in September 2011.

36.     In 2012, the FTC charged Defendant Facebook with eight separate privacy-related violations, including that Facebook made misrepresentations regarding users' ability to control the privacy of their personal data.  In response, Facebook agreed

---

[8] *Id.*

to change its privacy practices.  However, Facebook breached its agreement with the FTC, resulting in the FTC imposing a record-setting $5 billion penalty against Facebook in 2019.

37.     In 2015, Defendant Facebook was sued for violating the Illinois Biometric Information Privacy Act, 740 ILCS § 14/1, *et seq.*, as a result of a facial recognition feature that tagged people's photos.  In January 2020, Facebook settled the matter for $550 million.

38.     In 2018, hackers exploited a vulnerability in Defendant Facebook's code and stole personal information of approximately 29 million Facebook users.  Facebook has agreed to settle a consolidated class action arising out of the data breach.  As part of the settlement, Facebook has agreed to implement improved security practices.

### *Defendant LinkedIn*

39.     Defendant LinkedIn also has long a history of lax security practices and deceptive data privacy practices.

40.     In 2010, Defendant LinkedIn experienced a data breach in which a hacker obtained the passwords of approximately 6.5 million users.  According to reports, LinkedIn failed to store the passwords in a secure manner.  LinkedIn settled the matter for $1.25 million.

41.     Between September 2011 and October 31, 2014, Defendant LinkedIn imported contacts from users' external email contacts and then repeatedly emailed those

contacts without obtaining consent to use the users' names and likenesses. LinkedIn settled the matter for $13 million.

42. In November 2018, Ireland's Data Protection Commissioner found that Defendant LinkedIn obtained the email addresses of 18 million non-members and then targeted those non-members with Facebook advertisements without their consent. LinkedIn subsequently agreed to cease engaging in the conduct.

*The Unlawful Collection and Distribution of Users' Personal Information*

*Defendants Zoom and LinkedIn*

43. To enhance the "Zoom experience," Defendant Zoom offered users the ability to integrate third-party software applications ("app" or "apps") into the Zoom platform.

44. One such app was Navigator. According to Defendant Zoom's App Marketplace: (a) "[w]ith Zoom's LinkedIn Sales Navigator integration, you'll build connections and instantly gain insights about your meeting participants"; and (b) with LinkedIn Sales Navigator enabled, a person using the app "will be able to view LinkedIn details of . . . meeting participants . . . ."

45. According to Defendant LinkedIn's website, a salesperson using Navigator could "[t]arget the right buyers, understand key insights, and engage with personalized outreach."

LOEVY & LOEVY
Attorneys at Law

46.     At relevant times, a person hosting a Zoom video meeting while utilizing the Navigator app was able to view LinkedIn details of meeting participants, even when those participants sought to keep their personal details anonymous.

47.     Defendant LinkedIn gained the ability to provide a meeting host with meeting participants' LinkedIn details by willfully and intentionally using a recording device to record and eavesdrop on, and by otherwise reading, attempting to read and learning the contents and meaning of, communications between the participants' computers and Defendant Zoom's server while the same were in transit and passing over any wire, line or cable and were being sent from and received within the State of California.  LinkedIn engaged in this conduct in an unauthorized manner and without the meeting participants' knowledge or consent.   The meeting participants had a reasonable expectation of privacy in the communications and reasonably believed the communications were confidential.

48.     The personal information LinkedIn learned from the above-described eavesdropping activities included participants' persistent identifiers and other details that allowed LinkedIn to identify the participants by name and LinkedIn profile, even when the participants sought to keep their identities anonymous.

49.     On information and belief, Defendant LinkedIn was able to collect Zoom users' personal information even if the meeting host was not using Navigator, thereby

allowing LinkedIn to learn the contents of all sign-in communications of all Zoom users.

50.     Defendant Zoom has admitted that Navigator allowed for unnecessary data disclosure to Defendant LinkedIn.

51.     While Zoom had various privacy policies in effect at various times, the unnecessary data disclosure violated each of those policies.

52.     None of Defendant Zoom's privacy policies disclosed that Defendant LinkedIn was able to obtain users' personal information in the manner alleged above.

53.     Similarly, at no time did Defendant LinkedIn disclose to Zoom users that it collected their personal information from Defendant Zoom.

54.     On information and belief, Defendants Zoom and LinkedIn unjustly enriched themselves through Zoom's disclosure of Zoom users' personal information to LinkedIn by, among other ways, increasing sales of Navigator and increasing the number of total Zoom users and the number of Zoom users who paid for Zoom's services.

**Defendants Zoom and Facebook**

55.     At relevant times, Defendant Zoom allowed users of Apple's iOS operating system to access Zoom's platform via a "Login with Facebook" feature (the "iOS Login Feature").   The iOS Login Feature utilized a Facebook software development kit ("SDK") to function.

LOEVY & LOEVY
Attorneys at Law

56.     Via the iOS Login Feature, Defendant Facebook could, among other things surreptitiously collect personal information about Zoom users – even users who did not have a Facebook account and did not use the iOS Login Feature.

57.     Defendant Facebook collected the personal information by willfully and intentionally using a recording device to record and eavesdrop on, and by otherwise reading, attempting to read and learning the contents and meaning of, communications between the participants' computers and Defendant Zoom's server while the same were in transit and passing over any wire, line or cable and were being sent from and received within the State of California.  Facebook engaged in this conduct in an unauthorized manner and without the meeting participants' knowledge or consent.  The meeting participants had a reasonable expectation of privacy in the communications and reasonably believed the communications were confidential.

58.     Defendant Facebook's collection of Zoom users' personal information allowed Facebook to amass increasingly detailed profiles on users for use in its targeted advertising business.  Those profiles helped Defendant Zoom profit by being able to more accurately target users for additional services and to convert them to paying customers.

59.    The personal information Defendant Facebook learned about users included their:

      a.    iOS Advertiser ID;

      b.    iOS Timezone;

      c.    IP Address;

      d.    iOS Language;

      e.    iOS Disk Space Available;

      f.    iOS Disk Space Remaining;

      g.    iOS Device Model;

      h.    iOS Version;

      i.    Device Carrier;

      j.    iOS Device CPU Cores;

      k.    Application Bundle Identifier;

      l.    Application Instance ID; and

      m.    Application Version.

60.    A Zoom user's iOS Advertiser ID is known as a persistent identifier and is particularly sensitive because it is specifically assigned to the user and could be tracked over time, across platforms and linked to the user.  In isolation, a persistent identifier is merely a string of numbers used to identify an individual.  However, when linked to other data points about the same user – such as the data points described above

LOEVY & LOEVY
Attorneys at Law

LOEVY & LOEVY
Attorneys at Law

– a persistent identifier reveals a personal profile that data collectors like Defendant Facebook can exploit.

61.   The FTC has described the way in which a company like Defendant Facebook can use a persistent identifier in conjunction with other data points to amass a valuable profile on an individual:

> [In a recent survey], one ad network received information from 31 different apps.  Two of these apps transmitted geolocation to the ad network along with a device identifier [a type of persistent identifier], and the other 29 apps transmitted other data (such as app name, device configuration details, and the time and duration of use) in connection with a device ID.  ***The ad network could thus link the geolocation information obtained through the two apps to all the other data collected through the other 29 apps by matching the unique, persistent device ID.***[9]

62.   Defendant Facebook's surreptitious collection of the personal information described above allowed it to amass increasingly detailed profiles on Zoom users showing how, when and why they used Zoom, along with other inferences that could be drawn therefrom.

63.   Indeed, by obtaining a Zoom user's iOS Advertiser ID, along with the other information described above, Defendant Facebook was able to identify the specific user and amass the data collected from Defendant Zoom with other data

---

[9] Federal Trade Commission, *Mobile Apps for Kids: Disclosures Still Not Making the Grade*, at 10, n.25 (Dec. 2012), https://www.ftc.gov/sites/default/files/documents/reports/mobile-apps-kids-disclosures-still-not-making-grade/121210mobilekidsappreport.pdf (last accessed on Apr. 11, 2020) (emphasis added).

previously collected by Facebook, giving Facebook multiple ways to identify the user even if he took steps to keep his identity anonymous.

64.     Moreover, the combination of the iOS Advertiser ID and the other data described above better allowed Defendant Facebook to deanonymize a user's data and reidentify the user.  This is significant because many companies contend that they only share, sell or use personal information in an aggregate and/or anonymized format.  By obtaining the iOS Advertiser ID, along with the other personal information described above, Defendant Facebook could render the concept of anonymized data a nullity.[10]

65.     Defendant Zoom has admitted that the data collection conducted via the Login with Facebook feature was unnecessary to the provision of Defendant Zoom's services to users.

66.     While Zoom had various privacy policies in effect at various times, the unnecessary data disclosure violated each of those policies.

67.     None of Defendant Zoom's privacy policies disclosed that Defendant Facebook was able to obtain users' personal information in the manner alleged above.

68.     Similarly, at no time did Defendant Facebook disclose to Zoom users that it collected their personal information from Defendant Zoom.

---

[10] Luc Rocher, *et al.*, *Estimating the Success of Re-Identification in Incomplete Datasets Using Generative Models*, <u>Nature Communications</u> (July 23, 2019), https://www.nature.com/articles/s41467-019-10933-3 (last accessed on Apr. 11, 2020) (discussing reidentification of anonymized data).

LOEVY & LOEVY
Attorneys at Law

69.     On information and belief, Defendants Zoom and Facebook unjustly enriched themselves through Zoom's disclosure of Zoom users' personal information to Facebook by, among other ways: (a) allowing them to amass more detailed profiles on users; (b) allowing Facebook to increase its advertising business by marketing its ability to target advertisements based on its detailed personal profiles; and (c) allowing Zoom to more specifically target advertisements for its paid services and, thereby, generate revenues.

### Defendant Zoom's Misrepresentations Regarding Its Security Practices

70.     As alleged above, Defendant Zoom represented that it allowed all shared content to be encrypted using AES-256 encryption.

71.     In fact, Defendant Zoom utilized AES-128 encryption, an inferior form of encryption than AES-256.

72.     Moreover, Defendant Zoom utilized its AES-128 encryption in ECB mode, which is not recommended by security experts because patterns visible in plaintext are preserved during encryption.[11]  As a result, a viewer of the patterns can see and decipher the outlines of the encrypted information, as depicted in the images below:

---

[11] Bill Marczak, *et al.*, *Move Fast and Roll Your Own Crytpo, A Quick Look at the Confidentiality of Zoom Meetings*, The Citizen Lab (Apr. 3, 2020), https://citizenlab.ca/2020/04/move-fast-roll-your-own-crypto-a-quick-look-at-the-confidentiality-of-zoom-meetings/ (accessed on Apr. 11, 2020).

LOEVY & LOEVY
Attorneys at Law

 

*Original Image*        *Encrypted using ECB Mode*[12]

### The Market for Data

73.     Several online companies allow individuals to sell their own data online.

74.     One such company estimates that an individual can earn up $2,000 per year selling his data.

75.     By unlawfully collecting, distributing and using Zoom users' data, Defendants diminished the value of the data and unjustly enriched themselves.

### Allegations Related to Plaintiff

76.     At relevant times, the Zoom App was installed on Plaintiff Hurvitz's iPhone and Mac computer, both of which used the iOS operating system, and he used the Zoom App and Zoom's video communications services via those devices.  Plaintiff used the Zoom App and Zoom's video communications services from his residence and other places located within the Central District of California.

---

[12] *Id.*

LOEVY & LOEVY
Attorneys at Law

77.     Plaintiff Hurvitz did not consent to Defendants Facebook and LinkedIn eavesdropping and otherwise reading and learning the contents of his devices' communications with Defendant Zoom's servers.

78.     Plaintiff Hurvitz did not consent to Zoom collecting, disclosing and using his personal information for unlawful purposes and purposes not disclosed in its privacy policies.

79.     Plaintiff Hurvitz did not consent to the installation of code on his devices that served to benefit collection of his personal information by Defendants Facebook and LinkedIn.

80.     Plaintiff did not have knowledge of Defendants' conduct with respect to his data, as alleged herein.

***Plaintiff's and Class Members' Injuries and Damages***

81.     As a result of Defendants' conduct, Plaintiff and Class Members have suffered and will continue to suffer severe consequences, as Defendants' conduct has, among other things:

    a.     Diminished the value of the personal information of Plaintiff and Class Members;

    b.     Invaded Plaintiff's and Class Members' privacy;

    c.     Deprived Plaintiff and Class Members of the ability to control the sale of their personal information;

LOEVY & LOEVY
Attorneys at Law

Loevy & Loevy
Attorneys at Law

d.   Deprived Plaintiff and Class Members of their right to control and to choose how to use their identities for commercial purposes;

e.   Inhibited the ability of Plaintiff and Class Members to control the information third parties receive about them;

f.   Trespassed upon Plaintiff's and Class Members' devices on which the Zoom App was installed; and

g.   Precluded Plaintiff and Class Members from conditioning Defendants' use of their personal information on an agreement to provide Plaintiff and Class Members with a portion of the proceeds.

82.   Defendants' wrongful actions have directly and proximately caused Plaintiff and Class Members to face the immediate and continuing increased risk of economic damages and other actual harm for which they are entitled to compensation, including, among others:

a.   Damages to, and diminution in the value of, the personal information Defendants' collected, distributed and used;

b.   Costs associated with reviewing and trying to stop unwanted advertisements and solicitations, such as time taken from the enjoyment of one's life, and the inconvenience, nuisance, cost and annoyance of dealing with the unwanted solicitations; and

c.   The loss of Plaintiff's and Class Members' privacy.

*Fraudulent Concealment and Tolling*

83.    The applicable statutes of limitations are tolled by virtue of Defendants' knowing and active concealment of the facts alleged above.   Plaintiff and Class Members were ignorant of the information essential to the pursuit of these claims, without any fault or lack of diligence on their part.

84.    Defendants' fraudulent concealment is common to the Class and Subclasses

## CLASS ACTION ALLEGATIONS

85.    Plaintiff brings this action on behalf of himself as a class action under Federal Rule of Civil Procedure 23, seeking damages and equitable relief on behalf of the following nationwide Class for which Plaintiff seeks certification:

> All persons and businesses in the United States whose personal or private information was unlawfully collected, disclosed and/or used by Zoom, Facebook and/or LinkedIn upon the installation, opening, closing or use of the Zoom App (the "Nationwide Class").

86.    Additionally, Plaintiff brings this action on behalf of the following subclass of individuals seeking damages and relief:

> All persons and businesses in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington and West

LOEVY & LOEVY
Attorneys at Law

Virginia whose personal or private information was unlawfully collected, disclosed and/or used by Zoom, Facebook and/or LinkedIn upon the installation, opening, closing or use of the Zoom App (the "Intrusion Upon Seclusion Subclass").

87.   Additionally, Plaintiff brings this action on behalf of a California subclass seeking damages and equitable relief on behalf of the following:

All persons and businesses in the State of California whose personal or private information was unlawfully collected, disclosed and/or used by Zoom, Facebook and/or LinkedIn upon the installation, opening, closing or use of the Zoom App (the "California Subclass").

88.   Excluded from the Classes are: (a) Defendants Zoom, Facebook and LinkedIn; (b) any parent, affiliate or subsidiary of Zoom, Facebook and LinkedIn; (c) any entity in which Zoom, Facebook and LinkedIn has a controlling interest; (d) any of Zoom's, Facebook's or LinkedIn's officers or directors; or (e) any successor or assign of Zoom, Facebook or LinkedIn.   Also excluded are any judge or court personnel assigned to this case and members of their immediate families.

89.   Plaintiff reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

90.   **Numerosity.**   Consistent with Rule 23(a)(1), the Class and Subclasses (collectively, the "Classes") are so numerous that joinder of all members is impracticable.   While Plaintiff does not know the exact number of members of the Classes, the Nationwide Class contains millions of people.   Class Members may be

identified through objective means, including objective data available to Defendants regarding whose data they unlawfully collected, disclosed and/or used. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, social media and/or published notice. All members of the various classes are readily ascertainable because Defendants have access to information regarding the identity of each Zoom user whose data is at issue.

91. **Commonality and predominance.** Common questions of law and fact exist as to all Class Members. These common questions of law or fact predominate over any questions affecting only individual members of the Classes. Common questions include, but are not limited to the following:

a.    Whether Defendants engaged in wrongful conduct as alleged herein;

b.    Whether Defendant Zoom improperly collected, disclosed and used the personal information of Plaintiff and Class Members;

c.    Whether Defendants Facebook and LinkedIn intentionally and without the necessary consents used a recording device to eavesdrop upon and record the confidential communications between Plaintiff's and Class Members' devices, on the one hand, and Defendant Zoom's server on the other.

d.   Whether Defendants Facebook and LinkedIn willfully and without the necessary consents, in an unauthorized manner read, attempted to read and learned the contents and meaning of communications between Plaintiff's and Class Members' devices and Defendant Zoom's servers;

e.   Whether Defendant Zoom misrepresented to Plaintiff and Class Members the type of data encryption it utilized;

f.   Whether Defendant Zoom misrepresented their data disclosure practices to Plaintiff and Class Members;

g.   Whether Defendants obtained the personal information of Plaintiff and Class Members under false pretenses;

h.   Whether Defendants invaded Plaintiff's and Class Members' privacy;

i.   Whether Defendants engaged in unfair or deceptive trade practices by failing to disclose the true nature of how they collected, disclosed and/or used Plaintiff's and Class Members' personal information;

j.   Whether Defendant Zoom concealed data security flaws and its lax practices with respect to Plaintiff's and Class Members' personal information in order to prevent negative news from negatively impacting its business;

k.   Whether Plaintiff and Class Members suffered damages as a proximate result of Defendants' conduct;

l.   Whether Defendants unjustly enriched themselves through their unlawful conduct; and

m.   Whether Plaintiff and Class Members are entitled to damages, equitable relief and other relief.

92.   **Typicality.**   Plaintiff's claims are typical of the claims of the Classes he seeks to represent because Plaintiff and all members of the proposed Classes have suffered similar injuries as a result of the same practices alleged herein.   Plaintiff has no interests to advance adverse to the interests of the other members of the Classes.

93.   **Adequacy.**   Plaintiff will fairly and adequately protect the interests of Classes and has retained as his counsel attorneys experienced in class actions and complex litigation.

94.   **Superiority.**   A class action is superior to other available means for the fair and efficient adjudication of this dispute.   The injury suffered by each Class Member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible.   Even if Class Members could afford individual litigation, those actions would put immeasurable strain on the court system.   Moreover, individual litigation of the legal and factual issues of the case would increase the delay and expense to all parties and

1
2
3
4

the court system. A class action, however, presents far fewer management difficulties and provides the benefit of single adjudication, economy of scale and comprehensive supervision by a single court.

5
6
7
8
9

95. In the alternative, the proposed classes may be certified because:

a. The prosecution of separate actions by each individual member of the Classes would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendants;

10
11
12
13
14
15
16
17
18

b. The prosecution of individual actions could result in adjudications that as a practical matter would be dispositive of the interests of non-party Class Members or which would substantially impair their ability to protect their interests; and

c. Defendants acted or refused to act on grounds generally applicable to the proposed classes, thereby making final and injunctive relief appropriate with respect to members of the Classes.

19
20
21
22

96. Pursuant to Rule 23(c)(4) particular issues are appropriate for certification – namely the issues described in paragraph 91, above, because resolution of such issues would advance the disposition of the matter and the parties' interests therein.

23
24
25
26
27
28

LOEVY & LOEVY
Attorneys at Law

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LOEVY & LOEVY
Attorneys at Law

## CLAIMS FOR RELIEF

### COUNT ONE
### UNJUST ENRICHMENT
### (On behalf of all Classes against Defendant Zoom)

97.     Plaintiff restates and realleges all paragraphs of this Class Action Complaint as though fully set forth herein.

98.     Plaintiff and Class Members conferred a monetary benefit on Defendant Zoom – namely, among other things, Zoom used their personal information to increase its user base and the number of users paying for Zoom's services.

99.     Plaintiff and Class Members did not authorize or otherwise consent to Defendant Zoom unlawfully collecting, disclosing and/or using their personal information.

100.    Defendant Zoom appreciated, accepted and retained the benefit bestowed upon it under inequitable and unjust circumstances arising from Zoom's conduct toward Plaintiff and Class Members as described herein – namely: (a) Plaintiff and Class Members conferred a benefit on Zoom, and Zoom accepted or retained that benefit; and (b) Zoom used Plaintiff's and Class Members' personal information for business purposes – namely, it collected, disclosed and used the information to increase its revenues.

101.    Defendant Zoom did not provide full compensation for the benefit Plaintiff and Class Members conferred upon it.

102. Defendant Zoom acquired Plaintiff's and Class Members' personal information through inequitable means in that it misrepresented the purpose for which it obtained the information and how it would use that information.

103. Plaintiff and Class Members have no adequate remedy at law.

104. Under the circumstances, it would be unjust and unfair for Defendant Zoom to be permitted to retain any of the benefits that Plaintiff and Class Members conferred on it.

105. Under the principles of equity and good conscience, Defendant Zoom should not be permitted to retain the personal information belonging to Plaintiff and Class Members because Zoom obtained that information under false pretenses.

106. Defendant Zoom should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from the sale of Plaintiff's and Class Members' personal information.

## COUNT TWO
### UNJUST ENRICHMENT
**(On behalf of all Classes against Defendant Facebook)**

107. Plaintiff restates and realleges all paragraphs of this Class Action Complaint as though fully set forth herein.

108. Plaintiff and Class Members conferred a monetary benefit on Defendant Facebook – namely, among other things, Facebook used their personal information to

LOEVY & LOEVY
Attorneys at Law

amass increasingly detailed profiles of Plaintiff and Class Members and used those profiles to increase its advertising revenues.

109.   Plaintiff and Class Members did not authorize or otherwise consent to Defendant Facebook unlawfully collecting, disclosing and/or using their personal information.

110.   Defendant Facebook appreciated, accepted and retained the benefit bestowed upon it under inequitable and unjust circumstances arising from Facebook's conduct toward Plaintiff and Class Members as described herein – namely: (a) Plaintiff and Class Members conferred a benefit on Facebook, and Facebook accepted or retained that benefit; and (b) Facebook used Plaintiff's and Class Members' personal information for business purposes – namely, it collected, disclosed and used the information to increase its advertising revenues.

111.   Defendant Facebook did not provide full compensation for the benefit Plaintiff and Class Members conferred upon it.

112.   Defendant Facebook acquired Plaintiff's and Class Members' personal information through inequitable means in that it surreptitiously obtained the information to Plaintiff's and Class Members' detriment.

113.   Plaintiff and Class Members have no adequate remedy at law.

LOEVY & LOEVY
Attorneys at Law

LOEVY & LOEVY
Attorneys at Law

114.   Under the circumstances, it would be unjust and unfair for Defendant Facebook to be permitted to retain any of the benefits that Plaintiff and Class Members conferred on it.

115.   Under the principles of equity and good conscience, Defendant Facebook should not be permitted to retain the personal information belonging to Plaintiff and Class Members because Facebook obtained that information under false pretenses.

116.   Defendant Facebook should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from the sale of Plaintiff's and Class Members' personal information.

## COUNT THREE
### UNJUST ENRICHMENT
### (On behalf of all Classes against Defendant LinkedIn)

117.   Plaintiff restates and realleges all paragraphs of this Class Action Complaint as though fully set forth herein.

118.   Plaintiff and Class Members conferred a monetary benefit on Defendant LinkedIn – namely, among other things, LinkedIn used their personal information to increase the revenues derived from Navigator.

119.   Plaintiff and Class Members did not authorize or otherwise consent to Defendant Navigator unlawfully collecting, disclosing and/or using their personal information.

120.   Defendant LinkedIn appreciated, accepted and retained the benefit bestowed upon it under inequitable and unjust circumstances arising from LinkedIn's conduct toward Plaintiff and Class Members as described herein – namely: (a) Plaintiff and Class Members conferred a benefit on LinkedIn, and LinkedIn accepted or retained that benefit; and (b) LinkedIn used Plaintiff's and Class Members' personal information for business purposes – namely, it collected, disclosed and used the information to generate increased revenues.

121.   Defendant LinkedIn did not provide full compensation for the benefit Plaintiff and Class Members conferred upon it.

122.   Defendant LinkedIn acquired Plaintiff's and Class Members' personal information through inequitable means in that in that it surreptitiously obtained the information to Plaintiff's and Class Members' detriment.

123.   Plaintiff and Class Members have no adequate remedy at law.

124.   Under the circumstances, it would be unjust and unfair for Defendant LinkedIn to be permitted to retain any of the benefits that Plaintiff and Class Members conferred on it.

125.   Under the principles of equity and good conscience, Defendant LinkedIn should not be permitted to retain the personal information belonging to Plaintiff and Class Members because LinkedIn obtained that information under false pretenses.

LOEVY & LOEVY
Attorneys at Law

126.   Defendant LinkedIn should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from the sale of Plaintiff's and Class Members' personal information.

**COUNT FOUR**
**INTRUSION UPON SECLUSION**
**(On behalf of the Intrusion Upon Seclusion Subclass against Defendant Zoom)**

127.   Plaintiff restates and realleges all paragraphs of this Class Action Complaint as though fully set forth herein.

128.   Plaintiff and Class Members had a reasonable expectation of privacy to their personal information and were entitled to protection of this information against disclosure to unauthorized third parties.

129.   Defendant Zoom intentionally and maliciously intruded upon Plaintiff's and Class Members' privacy rights by: (a) failing to secure their  personal information from disclosure to unauthorized third parties for improper purposes; (b) disclosing their personal information to unauthorized third parties in a matter that is highly offensive to a reasonable person; and (c) disclosing their  personal information without Plaintiff's and Class Members' knowledge or consent.

130.   Defendant Zoom's intrusion upon Plaintiff's and Class Members' privacy rights was so serious as to constitute an egregious breach of social norms such that the breach was highly offensive.

131.   As a direct and proximate result of Defendant Zoom's unlawful intrusion upon Plaintiff's and Class Members' seclusion, Plaintiff's and Class Members' personal information has been disclosed, and their reasonable expectations of privacy have been intruded upon and frustrated.

132.   Plaintiff and Class Members have suffered injuries as a result of Defendant Zoom's conduct, and they are entitled to appropriate relief, including compensatory and punitive damages.

133.   Moreover, unless and until enjoined and restrained by order of this Court, Defendant Zoom's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that Zoom and others can continue to: (a) use the unlawfully obtained personal information to Plaintiff's and Class Members' detriment; and (b) unlawfully collect, distribute and/or use additional personal information belonging to Plaintiff and Class Members.  Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require Zoom to retrieve the personal information from the unauthorized entities to which it was disclosed.

**COUNT FIVE**
**INTRUSION UPON SECLUSION**
**(On behalf of the Intrusion Upon Seclusion Subclass**
**against Defendant Facebook)**

134.   Plaintiff restates and realleges all paragraphs of this Class Action Complaint as though fully set forth herein.

135.   Plaintiff and Class Members had a reasonable expectation of privacy to their personal information and were entitled to protection of this information against disclosure to unauthorized third parties.

136.   Defendant Facebook intentionally and maliciously intruded upon Plaintiff's and Class Members' privacy rights by surreptitiously learning the contents and meaning of Plaintiff's and Class Members' communications with Defendant Zoom, which contents contained personal information and allowed Facebook to identify Plaintiff and Class Members even if they did not want to be identified.  Facebook's intrusion occurred in a manner highly offensive to a reasonable person.

137.   Defendant Facebook's intrusion upon Plaintiff's and Class Members' privacy rights was so serious as to constitute an egregious breach of social norms such that that the breach was highly offensive.

138.   As a direct and proximate result of Defendant Facebook's unlawful intrusion upon Plaintiff's and Class Members' seclusion, Plaintiff's and Class Members' personal information has been disclosed to Facebook and their reasonable expectations of privacy have been intruded upon and frustrated.

LOEVY & LOEVY
Attorneys at Law

139.   Plaintiff and Class Members have suffered injuries as a result of Defendant Facebook's conduct, and they are entitled to appropriate relief, including compensatory and punitive damages.

140.   Moreover, unless and until enjoined and restrained by order of this Court, Defendant Facebook's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that Facebook and others can continue to: (a) use the unlawfully obtained personal information to Plaintiff's and Class Members' detriment.  Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require Facebook to retrieve the personal information from the unauthorized entities to which it was disclosed.

## COUNT SIX
### INTRUSION UPON SECLUSION
### (On behalf of the Intrusion Upon Seclusion Subclass
### against Defendant LinkedIn)

141.   Plaintiff restates and realleges all paragraphs of this Class Action Complaint as though fully set forth herein.

142.   Plaintiff and Class Members had a reasonable expectation of privacy to their personal information and were entitled to protection of this information against disclosure to unauthorized third parties.

143.  Defendant LinkedIn intentionally and maliciously intruded upon Plaintiff's and Class Members' privacy rights by surreptitiously learning the contents and meaning of Plaintiff's and Class Members' communications with Defendant Zoom, which contents contained  personal information and allowed LinkedIn to identify Plaintiff and Class Members even if they did not want to be identified.  LinkedIn's intrusion occurred in a manner highly offensive to a reasonable person, as a reasonable person would not expect a third party to surreptitiously learn the contents of the person's communications.

144.  Defendant LinkedIn's intrusion upon Plaintiff's and Class Members' privacy rights was so serious as to constitute an egregious breach of social norms such that that the breach was highly offensive.

145.  As a direct and proximate result of Defendant LinkedIn's unlawful intrusion upon Plaintiff's and Class Members' seclusion, Plaintiff's and Class Members' personal information has been disclosed to LinkedIn, and their reasonable expectations of privacy have been intruded upon and frustrated.

146.  Plaintiff and Class Members have suffered injuries as a result of Defendant LinkedIn's conduct, and they are entitled to appropriate relief, including compensatory and punitive damages.

147.  Moreover, unless and until enjoined and restrained by order of this Court, Defendant LinkedIn's wrongful conduct will continue to cause great and irreparable

injury to Plaintiff and Class Members in that LinkedIn and others can continue to: (a) use the unlawfully obtained  personal information to Plaintiff's and Class Members' detriment.  Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require LinkedIn to retrieve the personal information from the unauthorized entities to which it was disclosed.

## COUNT SEVEN
### INVASION OF PRIVACY UNDER CALIFORNIA CONSTITUTION – ARTICLE I, SECTION 1
**(On behalf of the California Subclass against Defendant Zoom)**

148.   Plaintiff restates and realleges all paragraphs of this Class Action Complaint as though fully set forth herein.

149.   Plaintiff and Class Members had a reasonable expectation of privacy to their personal information and were entitled to protection of this information against disclosure to unauthorized third parties.   As such, Plaintiff and Class Members possessed a legally protected privacy interest.

150.   Defendant Zoom intentionally and maliciously intruded upon Plaintiff's and Class Members' privacy rights by: (a) failing to secure their  personal information from disclosure to unauthorized third parties for improper purposes; (b) disclosing their personal information to unauthorized third parties in a matter that is highly offensive to

a reasonable person; and (c) disclosing their  personal information without Plaintiff's and Class Members' knowledge or consent.

151.   Defendant Zoom's intrusion upon Plaintiff's and Class Members' privacy rights was so serious as to constitute an egregious breach of social norms such that that the breach was highly offensive.

152.   As a direct and proximate result of Defendant Zoom's unlawful invasion of Plaintiff's and Class Members' privacy, Plaintiff's and Class Members' personal information has been disclosed, and their reasonable expectations of privacy have been intruded upon and frustrated.

153.   Plaintiff and Class Members have suffered injuries as a result of Defendant Zoom's conduct, and they are entitled to appropriate relief, including compensatory and punitive damages.

154.   Moreover, unless and until enjoined and restrained by order of this Court, Defendant Zoom's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that Zoom and others can continue to: (a) use the unlawfully obtained  personal information to Plaintiff's and Class Members' detriment; and (b) unlawfully collect, distribute and/or use additional  personal information belonging to Plaintiff and Class Members.  Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require Zoom to

retrieve the personal information from the unauthorized entities to which it was disclosed.

### COUNT EIGHT
### INVASION OF PRIVACY UNDER CALIFORNIA CONSITUTION – ARTICLE I, SECTION 1
### (On behalf of the California Subclass against Defendant Facebook)

155.   Plaintiff restates and realleges all paragraphs of this Class Action Complaint as though fully set forth herein.

156.   Plaintiff and Class Members had a reasonable expectation of privacy to their personal information and were entitled to protection of this information against disclosure to unauthorized third parties.   As such, Plaintiff and Class Members possessed a legally protected privacy interest.

157.   Defendant Facebook intentionally and maliciously intruded upon Plaintiff's and Class Members' privacy rights by surreptitiously learning the contents and meaning of Plaintiff's and Class Members' communications with Defendant Zoom, which contents contained personal information and allowed Facebook to identify Plaintiff and Class Members even if they did not want to be identified.   Facebook's intrusion occurred in a manner highly offensive to a reasonable person, as a reasonable person would not expect a third party to surreptitiously learn the contents of the person's communications.

158.   Moreover, as alleged above, Defendant Facebook's intrusion upon Plaintiff's and Class Members' privacy rights was so serious as to constitute an egregious breach of social norms such that that the breach was highly offensive.

159.   As a direct and proximate result of Defendant Facebook's unlawful invasion of Plaintiff's and Class Members' privacy, Plaintiff's and Class Members' personal information has been disclosed to Facebook and their reasonable expectations of privacy have been intruded upon and frustrated.

160.   Plaintiff and Class Members have suffered injuries as a result of Defendant Facebook's conduct, and they are entitled to appropriate relief, including compensatory and punitive damages.

161.   Moreover, unless and until enjoined and restrained by order of this Court, Defendant Facebook's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that Facebook and others can continue to: (a) use the unlawfully obtained  personal information to Plaintiff's and Class Members' detriment.  Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require Facebook to retrieve the personal information from the unauthorized entities to which it was disclosed.

## COUNT NINE
### INVASION OF PRIVACY UNDER CALIFORNIA CONSTITUTION – ARTICLE I, SECTION 1

LOEVY & LOEVY
Attorneys at Law

**(On behalf of the California Subclass against Defendant LinkedIn)**

162.   Plaintiff restates and realleges all paragraphs of this Class Action Complaint as though fully set forth herein.

163.   Plaintiff and Class Members had a reasonable expectation of privacy to their personal information and were entitled to protection of this information against disclosure to unauthorized third parties.   As such, Plaintiff and Class Members possessed a legally protected privacy interest.

164.   Defendant LinkedIn intentionally and maliciously intruded upon Plaintiff's and Class Members' privacy rights by surreptitiously learning the contents and meaning of Plaintiff's and Class Members' communications with Defendant Zoom, which contents contained personal information and allowed LinkedIn to identify Plaintiff and Class Members even if they did not want to be identified.   LinkedIn's intrusion occurred in a manner highly offensive to a reasonable person, as a reasonable person would not expect a third party to surreptitiously learn the contents of the person's communications.

165.   Moreover, as alleged above, Defendant LinkedIn's intrusion upon Plaintiff's and Class Members' privacy rights was so serious as to constitute an egregious breach of social norms such that that the breach was highly offensive.

166.   As a direct and proximate result of Defendant LinkedIn's unlawful invasion of Plaintiff's and Class Members' privacy, Plaintiff's and Class Members'

personal information has been disclosed to LinkedIn, and their reasonable expectations of privacy have been intruded upon and frustrated.

167.   Plaintiff and Class Members have suffered injuries as a result of Defendant LinkedIn's conduct, and they are entitled to appropriate relief, including compensatory and punitive damages.

168.   Moreover, unless and until enjoined and restrained by order of this Court, Defendant LinkedIn's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that LinkedIn and others can continue to: (a) use the unlawfully obtained personal information to Plaintiff's and Class Members' detriment.  Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require LinkedIn to retrieve the personal information from the unauthorized entities to which it was disclosed.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LOEVY & LOEVY
Attorneys at Law

**COUNT TEN**
## CALIFORNIA INVASION OF PRIVACY ACT, CAL. PEN. CODE § 631
### (On behalf of the California Subclass against Defendant Facebook)

169.    Plaintiff restates and realleges all paragraphs of this Class Action Complaint as though fully set forth herein.

170.    Defendant Facebook willfully and without the consent of all parties to communications between Plaintiff and Class Members, on the one hand, and Defendant Zoom, on the other, in an unauthorized manner read, attempted to read and learned the contents and meaning of the messages, reports and communications between those parties while the same were in transit and passing over any wire, line or cable and were being sent from and received within the State of California.

171.    Plaintiff and Class Members did not authorize or consent to the conduct in the paragraph above.

172.    Defendant Facebook was not a party to the above-described communications.

173.    Defendant Facebook's conduct was designed to read, attempt to read and learn at least some of the meaning of the content of the communications between Plaintiff's and Class Members' devices and Defendant Zoom's server.

174.    Defendant Facebook's conduct violated the California Invasion of Privacy Act, Cal. Pen. Code, § 631.

LOEVY & LOEVY
Attorneys at Law

175.   As a direct and proximate result of Defendant Facebook's violation of the California Invasion of Privacy Act, Plaintiff's and Class Members' personal information was disclosed to Facebook, causing Plaintiff and Class Members to suffer injuries.

176.   Plaintiff and Class Members seek the greater of $5,000 per violation or three times the amount of actual damages

177.   Moreover, unless and until enjoined and restrained by order of this Court, Defendant Facebook's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that Facebook and others can continue to: (a) use the unlawfully obtained  personal information to Plaintiff's and Class Members' detriment.  Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require Facebook to retrieve the personal information from the unauthorized entities to which it was disclosed.

### COUNT ELEVEN
### CALIFORNIA INVASION OF PRIVACY ACT, CAL. PEN. CODE § 632
### (On behalf of the California Subclass against Defendant Facebook)

178.   Plaintiff restates and realleges all paragraphs of this Class Action Complaint as though fully set forth herein.

179.   Defendant Facebook intentionally and without the consent of all parties to confidential communications between Plaintiff and Class Members, on the one hand,

and Defendant Zoom, on the other, used a recording device to eavesdrop upon and record the confidential communications.

180. Plaintiff and Class Members did not authorize or consent to the conduct in the paragraph above.

181. Plaintiff and Class Members had a reasonable expectation of privacy in the above-described communications and reasonably expected them to be confidential.

182. Defendant Facebook was not a party to the above-described communications.

183. Defendant Facebook's conduct was designed to read, attempt to read and learn at least some of the meaning of the content of the communications between Plaintiff's and Class Members' devices and Defendant Zoom's server.

184. The following items, among others, constitute recording devices within the meaning of the California Invasion of Privacy Act:

        a.      The Zoom App;

        b.      Facebook's iOS Login Feature;

        c.      Plaintiff's and Class Members' web browsers;

        d.      Defendant Zoom's servers; and

        e.      The servers and websites from which Defendant Facebook tracked, intercepted and recorded Plaintiff's and Class Members' communications with Zoom.

LOEVY & LOEVY
Attorneys at Law

1   185.   Defendant Facebook's conduct violated the California Invasion of Privacy

2   Act, Cal. Pen. Code, § 632.

3   186.   As a direct and proximate result of Defendant Facebook's violation of the

4   California Invasion of Privacy Act, Plaintiff's and Class Members' personal

5   information was disclosed to Facebook, causing Plaintiff and Class Members to suffer

6   injuries.

7   187.   Plaintiff and Class Members seek the greater of $5,000 per violation or

8   three times the amount of actual damages

9   188.   Moreover, unless and until enjoined and restrained by order of this Court,

10  Defendant Facebook's wrongful conduct will continue to cause great and irreparable

11  injury to Plaintiff and Class Members in that Facebook and others can continue to: (a)

12  use the unlawfully obtained  personal information to Plaintiff's and Class Members'

13  detriment.  Plaintiff and Class Members have no adequate remedy at law for the injuries

14  in that a judgment for monetary damages will not end the invasion of privacy for

15  Plaintiff and Class Members or require Facebook to retrieve the personal information

16  from the unauthorized entities to which it was disclosed.

LOEVY & LOEVY
Attorneys at Law

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LOEVY & LOEVY
Attorneys at Law

## COUNT TWELVE
### CALIFORNIA INVASION OF PRIVACY ACT, CAL. PEN. CODE § 631
### (On behalf of the California Subclass against Defendant LinkedIn)

189.   Plaintiff restates and realleges all paragraphs of this Class Action Complaint as though fully set forth herein.

190.   Defendant LinkedIn willfully and without the consent of all parties to communications between Plaintiff and Class Members, on the one hand, and Defendant Zoom, on the other, in an unauthorized manner read, attempted to read and learned the contents and meaning of the messages, reports and communications between those parties while the same were in transit and passing over any wire, line or cable and were being sent from and received within the State of California.

191.   Plaintiff and Class Members did not authorize or consent to the conduct in the paragraph above.

192.   Defendant LinkedIn was not a party to the above-described communications.

193.   Defendant LinkedIn's conduct was designed to read, attempt to read and learn at least some of the meaning of the content of the communications between Plaintiff's and Class Members' devices and Defendant Zoom's server.

194.   Defendant LinkedIn's conduct violated the California Invasion of Privacy Act, Cal. Pen. Code, § 631.

LOEVY & LOEVY
Attorneys at Law

195.   As a direct and proximate result of Defendant LinkedIn's violation of the California Invasion of Privacy Act, Plaintiff's and Class Members' personal information was disclosed to LinkedIn, causing Plaintiff and Class Members to suffer injuries.

196.   Plaintiff and Class Members seek the greater of $5,000 per violation or three times the amount of actual damages

197.   Moreover, unless and until enjoined and restrained by order of this Court, Defendant LinkedIn's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that LinkedIn and others can continue to: (a) use the unlawfully obtained  personal information to Plaintiff's and Class Members' detriment.  Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require LinkedIn to retrieve the personal information from the unauthorized entities to which it was disclosed.

## COUNT THIRTEEN
## CALIFORNIA INVASION OF PRIVACY ACT, CAL. PEN. CODE § 632
### (On behalf of the California Subclass against Defendant LinkedIn)

198.   Plaintiff restates and realleges all paragraphs of this Class Action Complaint as though fully set forth herein.

199.   Defendant LinkedIn intentionally and without the consent of all parties to confidential communications between Plaintiff and Class Members, on the one hand,

and Defendant Zoom, on the other, used a recording device to eavesdrop upon and record the confidential communications.

200.   Plaintiff and Class Members did not authorize or consent to the conduct in the paragraph above.

201.   Plaintiff and Class Members had a reasonable expectation of privacy in the above-described communications and reasonably expected them to be confidential.

202.   Defendant LinkedIn was not a party to the above-described communications.

203.   Defendant LinkedIn's conduct was designed to read, attempt to read and learn at least some of the meaning of the content of the communications between Plaintiff's and Class Members' devices and Defendant Zoom's server.

204.   The following items, among others, constitute recording devices within the meaning of the California Invasion of Privacy Act:

     a.    The Zoom App;

     b.    The Navigator app;

     c.    Plaintiff's and Class Members' web browsers;

     d.    Defendant Zoom's servers; and

     e.    The servers and websites from which Defendant LinkedIn tracked, intercepted and recorded Plaintiff's and Class Members' communications with Zoom.

LOEVY & LOEVY
Attorneys at Law

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LOEVY & LOEVY
Attorneys at Law

205.   Defendant LinkedIn's conduct violated the California Invasion of Privacy Act, Cal. Pen. Code, § 632.

206.   As a direct and proximate result of Defendant LinkedIn's violation of the California Invasion of Privacy Act, Plaintiff's and Class Members' personal information was disclosed to LinkedIn, causing Plaintiff and Class Members to suffer injuries.

207.   Plaintiff and Class Members seek the greater of $5,000 per violation or three times the amount of actual damages

208.   Moreover, unless and until enjoined and restrained by order of this Court, Defendant LinkedIn's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that LinkedIn and others can continue to: (a) use the unlawfully obtained  personal information to Plaintiff's and Class Members' detriment.  Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require LinkedIn to retrieve the personal information from the unauthorized entities to which it was disclosed.

LOEVY & LOEVY
Attorneys at Law

**COUNT FOURTEEN**
**UNLAWFUL AND UNFAIR BUSINESS PRACTICES**
**IN VIOLATION OF BUS. & PROF. CODE § 17200, *et seq.***
**(On behalf of the California Subclass against Defendant Zoom)**

209. Plaintiff restates and realleges all paragraphs of this Class Action Complaint as though fully set forth herein.

210. California's Unfair Competition Law (the "UCL") prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

211. Defendant Zoom engaged in unlawful, unfair and fraudulent business acts and practices within the meaning of the UCL.

212. Defendant Zoom has engaged in the following unlawful, unfair and fraudulent business acts and practices:

    a.    Intrusion upon seclusion, as alleged above;

    b.    Invasion of privacy under the California Constitution, Art. I, § 1, as alleged above;

    c.    Failing to comply with the California Consumer Privacy Act (the "CCPA"), Civil Code § 1798.100(b);

    d.    Failing to comply with § 5 of the FTC Act (15 U.S.C. § 45);

    e.    Unfair competition in lessening the value of Plaintiff's and Class Members' personal information, which they could sell elsewhere;

f.      Misrepresenting its security practices with respect to Plaintiff's and Class Members' personal information;

g.      Misrepresenting its privacy practices with respect to Plaintiff's and Class Members' personal information;

h.      Omitting, suppressing and concealing data security flaws and its lax practices with respect to Plaintiff's and Class Members' personal information in order to prevent negative news from negatively impacting its business;

i.      Omitting, suppressing and concealing that it did not comply with common law and statutory duties pertaining to Plaintiff's and Class Members' personal information, including duties imposed by the California Constitution, Art. I, § I; the CCPA, Civil Code § 1798.100(b); and § 5 of the FTC Act, 15 U.S.C. § 45.

213.   With respect to Defendant Zoom's violations of the CCPA, pursuant to Cal. Civ. Code § 1798.100(b), a business: (a) "that collects a consumer's personal information shall, at or before the point of collection, inform customers as to the categories of personal information to be collected and the purposes for which the categories of personal information shall be used"; and (b) "shall not collect additional categories of personal information or use personal information collected for additional

LOEVY & LOEVY
Attorneys at Law

purposes without providing the consumer with notice consistent with this section." Cal. Civ. Code § 1798.100(b).

214.  Section 1798.140(o)(1) of the California Civil Code defines "personal information" as "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household," Cal. Civ. Code § 1798.140(o)(1). Personal information includes, but is not limited to:

> (A) Identifiers such as a real name, alias, postal address, unique personal identifier, online identifier, internet protocol address, email address, account name, social security number, driver's license number, passport number, or other similar identifiers.
>
> *   *   *
>
> (F) Internet or other electronic network activity information, including, but not limited to, browsing history, search history, and information regarding a consumer's interaction with an internet website, application, or advertisement.
>
> (G) Geolocation data.

*Id.*

215.  Plaintiff and Class Members are consumers under the CCPA. *See* Cal. Civ. Code § 1798.140(g).

216.  Defendant Zoom is a business under the CCPA. *See* Cal. Civ. Code § 1798.140(c).

LOEVY & LOEVY
Attorneys at Law

LOEVY & LOEVY
Attorneys at Law

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

217.   As alleged herein, in violation of the CCPA, Defendant Zoom collected Plaintiff and Class Members' personal information but failed to provide Plaintiff and Class Members with the information required by the CCPA, namely, Zoom failed to accurately inform Plaintiff and Class Members as to the categories of personal information to be collected and the purposes for which the categories of personal information were to be used.

218.   As alleged herein, Defendant Zoom further violated the CCPA by using the personal information it collected from Plaintiff and Class Members for undisclosed purposes without providing the requisite notice.

219.   With respect to Defendant Zoom's violation of § 5 of the FTC Act, the FTC has brought numerous actions against businesses for their unfair and deceptive practices in harvesting personal information from a software application.

220.   At relevant times, Defendant Zoom knew of its obligations to act fairly and honestly in its business dealings and not to violate § 5 of the FTC Act.

221.   Defendant Zoom's conduct with respect to Plaintiff's and Class Members' personal information constituted an unfair and deceptive practice in violation of § 5 of the FTC Act.

222.   Defendant Zoom's above-described conduct constituted unfair practices in violation of the UCL because the practices and acts: (a) were immoral, unethical, oppressive, unscrupulous and substantially injurious to Plaintiff and Class Members;

LOEVY & LOEVY
Attorneys at Law

and (b) violated established public policy.  These acts caused substantial injury to Plaintiff and Class Members; this substantial injury outweighed any benefits to competition or the purpose of such conduct, and there were reasonably available alternatives to further Zoom's legitimate business interests.

223.   By collecting, disclosing and using Plaintiff's and Class Members' personal information in ways that Plaintiff and Class Members did not know of or consent to, Defendant Zoom engaged in fraudulent business practices that were likely to deceive a reasonable consumer.

224.   A reasonable person would not have agreed to use the Zoom App had Defendant Zoom not concealed, omitted and suppressed the truth about its practices, as alleged herein.  By withholding material information about its practices, Zoom deceived customers into using its products and platform and to entrust their personal information to Zoom.  Accordingly, Zoom's conduct also was fraudulent within the meaning of the UCL.

225.   As a result of Defendant Zoom's violations of the UCL, Plaintiff and Class Members have suffered an injury-in-fact and have lost money and property.  Plaintiff and Class Members are entitled to restitution and disgorgement, declaratory and other equitable relief.

226.   Moreover, Plaintiff and California Subclass Members are entitled to injunctive relief.  Unless and until enjoined and restrained by order of this Court,

Defendant Zoom's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that Zoom and others can continue to: (a) use the unlawfully obtained personal information to Plaintiff's and Class Members' detriment. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require Zoom to retrieve the personal information from the unauthorized entities to which it was disclosed.

**COUNT FIFTEEN**
**UNLAWFUL AND UNFAIR BUSINESS PRACTICES**
**IN VIOLATION OF BUS. & PROF. CODE § 17200, *et seq.***
**(On behalf of the California Subclass against Defendant Facebook)**

227. Plaintiff restates and realleges all paragraphs of this Class Action Complaint as though fully set forth herein.

228. California's Unfair Competition Law (the "UCL") prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

229. Defendant Facebook engaged in unlawful, unfair and fraudulent business acts and practices within the meaning of the UCL.

230.   Defendant Facebook has engaged in the following unlawful, unfair and fraudulent business acts and practices:

a.   Intrusion upon seclusion, as alleged above;

b.   Invasion of privacy under the California Constitution, Art. I, § 1, as alleged above;

c.   Failing to comply with the California Invasion of Privacy Act, Cal. Pen. Code §§ 631-632, as alleged above;

d.   Failing to comply with the § 1798.100(b) of the CCPA;

e.   Failing to comply with § 5 of the FTC Act (15 U.S.C. § 45);

f.   Unfair competition in lessening the value of Plaintiff's and Class Members' personal information, which they could sell elsewhere;

g.   Omitting, suppressing and concealing that it did not comply with common law and statutory duties pertaining to Plaintiff's and Class Members' personal information, including duties imposed by the California Constitution, Art. I, § I; the California Invasion of Privacy Act, Cal. Pen. Code §§ 631-632; the CCPA, Cal. Civ. Code § 1798.100(b); and § 5 of the FTC Act, 15 U.S.C. § 45.

231.   With respect to Defendant Facebook's violations of the CCPA, pursuant to Cal. Civ. Code § 1798.100(b), a business: (a) "that collects a consumer's personal information shall, at or before the point of collection, inform customers as to the

LOEVY & LOEVY
Attorneys at Law

categories of personal information to be collected and the purposes for which the categories of personal information shall be used"; and (b) "shall not collect additional categories of personal information or use personal information collected for additional purposes without providing the consumer with notice consistent with this section." Cal. Civ. Code § 1798.100(b).

232.   Section 1798.140(o)(1) defines "personal information" as "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household," Cal. Civ. Code § 1798.140(o)(1).   Personal information includes, but is not limited to:

> (A) Identifiers such as a real name, alias, postal address, unique personal identifier, online identifier, internet protocol address, email address, account name, social security number, driver's license number, passport number, or other similar identifiers.

> \*     \*     \*

> (F) Internet or other electronic network activity information, including, but not limited to, browsing history, search history, and information regarding a consumer's interaction with an internet website, application, or advertisement.

> (G)  Geolocation data.

*Id.*

233.   Plaintiff and Class Members are consumers under the CCPA.   *See* Cal. Civ. Code § 1798.140(g).

LOEVY & LOEVY
Attorneys at Law

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LOEVY & LOEVY
Attorneys at Law

234.   Defendant Facebook is a business under the CCPA.  *See* Cal. Civ. Code § 1798.140(c).

235.   As alleged herein, in violation of the CCPA, Defendant Facebook collected Plaintiff's and Class Members' personal information but failed to provide Plaintiff and Class Members with the information required by the CCPA, namely Facebook failed to accurately inform Plaintiff and Class Members as to the categories of personal information to be collected and the purposes for which the categories of personal information were to be used.

236.   As alleged herein, Defendant Facebook further violated the CCPA by using the personal information it collected from Plaintiff and Class Members for undisclosed purposes without providing the requisite notice.

237.   With respect to Defendant Facebook's violation of § 5 of the FTC Act, the FTC has brought numerous actions against businesses for their unfair and deceptive practices in harvesting personal information from a software application.

238.   At relevant times, Defendant Facebook knew of its obligations to act fairly and honestly in its business dealings and not to violate § 5 of the FTC Act.

239.   Defendant Facebook's conduct with respect to Plaintiff's and Class Members' personal information constituted an unfair and deceptive practice in violation of § 5 of the FTC Act.

240. Defendant Facebook's above-described conduct constituted unfair practices in violation of the UCL because the practices and acts: (a) were immoral, unethical, oppressive, unscrupulous and substantially injurious to Plaintiff and Class Members; and (b) violated established public policy. These acts caused substantial injury to Plaintiffs and Class Members; this substantial injury outweighed any benefits to competition or the purpose of such conduct, and there were reasonably available alternatives to further Facebook's legitimate business interests.

241. By collecting, disclosing and using Plaintiff's and Class Members' personal information in ways that Plaintiff and Class Members did not know of or consent to, Defendant Facebook engaged in fraudulent business practices that were likely to deceive a reasonable consumer.

242. A reasonable person would not have agreed to use the Zoom App had Defendant Facebook not concealed, omitted and suppressed the truth about its practices, as alleged herein. By withholding material information about its practices, Facebook deceived customers into using products that allowed Facebook to surreptitiously collect Plaintiff's and Class Members' personal information. Accordingly, Facebook's conduct also was fraudulent within the meaning of the UCL.

243. As a result of Defendant Facebook's violations of the UCL, Plaintiff and Class Members have suffered an injury-in-fact and have lost money and property.

LOEVY & LOEVY
Attorneys at Law

LOEVY & LOEVY
Attorneys at Law

Plaintiff and Class Members are entitled to restitution and disgorgement, declaratory and other equitable relief.

244.    Moreover, Plaintiff and Class Members are entitled to injunctive relief. Unless and until enjoined and restrained by order of this Court, Defendant Facebook's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that Facebook and others can continue to: (a) use the unlawfully obtained personal information to Plaintiff's and Class Members' detriment.  Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require Facebook to retrieve the personal information from the unauthorized entities to which it was disclosed.

**COUNT SIXTEEN**
**UNLAWFUL AND UNFAIR BUSINESS PRACTICES**
**IN VIOLATION OF BUS. & PROF. CODE § 17200, *et seq.***
**(On behalf of the California Subclass against Defendant LinkedIn)**

245.    Plaintiff restates and realleges all paragraphs of this Class Action Complaint as though fully set forth herein.

246.    California's Unfair Competition Law (the "UCL") prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

247.   Defendant LinkedIn engaged in unlawful, unfair and fraudulent business acts and practices within the meaning of the UCL.

248.   Defendant LinkedIn has engaged in the following unlawful, unfair and fraudulent business acts and practices:

      a.    Intrusion upon seclusion, as alleged above;

      b.    Invasion of privacy under the California Constitution, Art. I, § 1, as alleged above;

      c.    Failing to comply with the California Invasion of Privacy Act, Cal. Pen. Code §§ 631-632, as alleged above;

      d.    Failing to comply with § 1798.100(b) of the CCPA;

      e.    Failing to comply with § 5 of the FTC Act (15 U.S.C. § 45);

      f.    Unfair competition in lessening the value of Plaintiff's and Class Members' personal information, which they could sell elsewhere;

      g.    Omitting, suppressing and concealing that it did not comply with common law and statutory duties pertaining to Plaintiff's and Class Members' personal information, including duties imposed by the California Constitution, Art. I, § I; the California Invasion of Privacy Act, Cal. Pen. Code §§ 631-632; the CCPA, Cal. Civ. Code § 1798.100(b); and § 5 of the FTC Act, 15 U.S.C. § 45.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LOEVY & LOEVY
Attorneys at Law

249.   With respect to Defendant LinkedIn's violations of the CCPA, pursuant to Cal. Civ. Code § 1798.100(b), a business: (a) "that collects a consumer's personal information shall, at or before the point of collection, inform customers as to the categories of personal information to be collected and the purposes for which the categories of personal information shall be used"; and (b) "shall not collect additional categories of personal information or use personal information collected for additional purposes without providing the consumer with notice consistent with this section." Cal. Civ. Code § 1798.100(b).

250.   Cal. Civ. Code § 1798.140(o)(1) defines "personal information" as "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household,"  Cal. Civ. Code § 1798.140(o)(1).   Personal information includes, but is not limited to:

    (A) Identifiers such as a real name, alias, postal address, unique personal identifier, online identifier, internet protocol address, email address, account name, social security number, driver's license number, passport number, or other similar identifiers.

               *    *    *

    (F) Internet or other electronic network activity information, including, but not limited to, browsing history, search history, and information regarding a consumer's interaction with an internet website, application, or advertisement.

(G)  Geolocation data.

*Id.*

251.  Plaintiff and Class Members are consumers under the CCPA.  *See* Cal. Civ. Code § 1798.140(g).

252.  Defendant LinkedIn is a business under the CCPA.  *See* Cal. Civ. Code § 1798.140(c).

253.  As alleged herein, in violation of the CCPA, Defendant LinkedIn collected Plaintiff's and Class Members' personal information but failed to provide Plaintiff and Class Members with the information required by the CCPA, namely, LinkedIn failed to accurately inform Plaintiff and Class Members as to the categories of personal information to be collected and the purposes for which the categories of personal information were to be used.

254.  As alleged herein, Defendant LinkedIn further violated the CCPA by using the personal information it collected from Plaintiff and Class Members for undisclosed purposes without providing the requisite notice.

255.  With respect to Defendant LinkedIn's violation of § 5 of the FTC Act, the FTC has brought numerous actions against businesses for their unfair and deceptive practices in harvesting personal information from a software application.

256.  At relevant times, Defendant LinkedIn knew of its obligations to act fairly and honestly in its business dealings and not to violate § 5 of the FTC Act.

257. Defendant LinkedIn's conduct with respect to Plaintiff's and Class Members' personal information constituted an unfair and deceptive practice in violation of § 5 of the FTC Act.

258. Defendant LinkedIn's above-described conduct constituted unfair practices in violation of the UCL because the practices and acts: (a) were immoral, unethical, oppressive, unscrupulous and substantially injurious to Plaintiff and Class Members; and (b) violated established public policy.  These acts caused substantial injury to Plaintiff and Class Members; this substantial injury outweighed any benefits to competition or the purpose of such conduct, and there were reasonably available alternatives to further LinkedIn's legitimate business interests.

259. By collecting, disclosing and using Plaintiff's and California Subclass Members' personal information in ways that Plaintiff and Class Members did not know of or consent to, Defendant LinkedIn engaged in fraudulent business practices that were likely to deceive a reasonable consumer.

260. A reasonable person would not have agreed to use the Zoom App had Defendant LinkedIn not concealed, omitted and suppressed the truth about its practices, as alleged herein.  By withholding material information about its practices, LinkedIn deceived customers into using products that allowed LinkedIn to surreptitiously collect Plaintiff's and Class Members' personal information.  Accordingly, LinkedIn's conduct also was fraudulent within the meaning of the UCL.

LOEVY & LOEVY
Attorneys at Law

261.   As a result of Defendant LinkedIn's violations of the UCL, Plaintiff and Class Members have suffered injury-in-fact and have lost money and property.  Plaintiff and Class Members are entitled to restitution and disgorgement, declaratory and other equitable relief.

262.   Moreover, Plaintiff and Class Members are entitled to injunctive relief. Unless and until enjoined and restrained by order of this Court, Defendant LinkedIn's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that LinkedIn and others can continue to: (a) use the unlawfully obtained personal information to Plaintiff's and Class Members' detriment.  Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require LinkedIn to retrieve the personal information from the unauthorized entities to which it was disclosed.

## COUNT SEVENTEEN
## TRESPASS TO CHATTELS
### (On behalf of the Nationwide Class against all Defendants)

263.   Plaintiff restates and realleges all paragraphs of this Class Action Complaint as though fully set forth herein.

264.   Defendants, intentionally and without consent or other legal justification, installed code on Plaintiff's and Class Members' devices that enabled Defendants to

collect, disclose and use Plaintiff's and Class Members' personal information in unauthorized ways and for unauthorized purposes.

265.   Defendants' conduct as alleged in the paragraph above interfered with Plaintiff's and Class Members' use of the following property owned by Plaintiff and Class Members: (a) their computers; (b) their mobile devices; and (c) their personal information.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Todd Hurvitz, on behalf of himself and on behalf of the all Class Members, respectfully seeks from the Court the following relief:

a.   Certification of the Classes as requested herein;

b.   Appointment of Plaintiff as Class representative and his undersigned counsel as Class counsel;

c.   Award Plaintiff and members of the proposed Classes damages;

d.   Award Plaintiff and members of the proposed Classes equitable, injunctive and declaratory relief;

e.   Award Plaintiff and members of the proposed Classes pre-judgment and post-judgment interest as permitted by law;

f.   Award Plaintiff and members of the proposed Classes reasonable attorneys' fees and costs of suit; including expert witness fees; and

LOEVY & LOEVY
Attorneys at Law

**CLASS ACTION COMPLAINT**

g.     Award Plaintiff and members of the proposed Classes any further

relief the Court deems proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on all claims so triable.

Dated: April 13, 2020

Respectfully submitted,

/s/ David B. Owens
*One of Plaintiff's Attorneys*

David B. Owens (david@loevy.com)
Mike Kanovitz (mike@loevy.com)*
Scott R. Drury (drury@loevy.com)*
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 (phone)
(312) 243-5902 (fax)
*Counsel for Plaintiff*

* *Pro hac vice* application forthcoming